AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

Case No. 16-M- 5055

MATTHEW JASKULA

*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 19, 2016, in the Western District of New York, the defendant, MATTHEW JASKULA, while acting under color of law, did willfully deprive a person of the right secured and protected by the Constitution and laws of the United States to be free from the use of unreasonable force by a person acting under color of law, resulting in bodily injury to the person.

**All in violation of Title 18, United States Code, Section 242.**

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

JENNIFER J. AMO, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 9, 2016

_____
*Judge's signature*

MICHAEL J. ROEMER
United States Magistrate Judge
*Printed name and title*

City and State: Buffalo, New York

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF ERIE       )   SS:
CITY OF BUFFALO      )

JENNIFER J. AMO, being duly sworn, deposes and says:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with the FBI for approximately seventeen years. I am currently assigned to the Violent Crimes Against Children Squad in the Buffalo Division of the FBI and investigate, among other things, Civil Rights violations. Prior to that, I was assigned to the White Collar Crime Squad in Buffalo, where in addition to Civil Rights violations, I investigated Human Trafficking. Prior to working in the Buffalo Division, I worked in the Los Angeles Division of the FBI for six years, where I investigated Eurasian Organized Crime matters. During the course of my employment with the FBI, I have participated in the execution of numerous arrest warrants.

2. This affidavit is submitted in support of the application by the United States for a complaint and arrest warrant charging MATTHEW JASKULA ("JASKULA"), the defendant, with, while acting under color of law, willfully depriving a person (hereinafter referred to as Victim), of the right secured and protected by the Constitution and laws of the United States to be free from the use of unreasonable force by a person acting under color of law, resulting in bodily injury to the Victim, in violation of Title 18, United States Code, Section 242.

3. I have been personally involved in the investigation of this matter. During the course of this investigation, I have participated in interviews of the Victim and personnel of the Buffalo Police Department, and reviewed other pertinent documents and records and video recordings of the events set forth below. The statements contained herein are based in part on information provided by other law enforcement personnel and my review of the mentioned materials. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part. I have set forth only the facts necessary to establish probable cause to believe that JASKULA has violated Title 18, United States Code, Section 242.

4. MATTHEW JASKULA began his employment with the Buffalo Police Department ("BPD") as a cell block attendant in 2013. He is assigned to the BPD City Court Lock-Up. The BPD City Court Lock-Up is located at BPD headquarters on Franklin Street in Buffalo. The lock-up is used to process BPD arrestees and hold them prior to appearing in Buffalo City Court. The lock-up area is equipped with a video recording system, such that the arrival of prisoners such as Victim is recorded from the point a BPD vehicle containing a prisoner arrives in the headquarters garage, through all booking procedures, including transportation of a prisoner from the garage to the booking area and into the cell block area as well as within the cell block area itself. As of May 19, 2016, JASKULA held the rank of Senior Cell Block Attendant.

5. On May 19, 2016, at approximately 9:20 p.m., the Victim was arrested by two uniformed BPD officers and transported to BPD headquarters for processing in the BPD lock-up. Victim and the two BPD officers arrived at BPD headquarters at approximately 9:38 p.m. and Victim was transported into the booking area of the lock-up for processing. The processing of Victim was completed at approximately 9:58 p.m. at which time the two officers escorted Victim to the cell block area.

6. At approximately 10:00 p.m., the door to the cell block area was opened and the two officers and Victim proceeded into the fingerprint and mug shot room. Upon entering that room, Victim immediately walked over and faced a wall with his two feet on feet diagrams on the floor. It should also be noted that, as they had been throughout Victim's time at BPD, Victim's hands were handcuffed behind his back. Upon entering the room, Victim and the two officers were met by JASKULA and another cell block attendant. JASKULA opened the door to the room allowing the two officers and Victim to enter. Upon entering the room, Victim, one of the officers and JASKULA appear to be engaging in conversation, with Victim on occasion speaking over his shoulders to JASKULA and the officers. It should be noted that at all times, Victim stood facing the wall unaccompanied by any officer and at no time engaged in any actions which could be construed as a physical threat to anyone else in the room. At one point while in the room, Victim, while facing the wall and with JASKULA standing immediately behind him, turned his head and said something over his right shoulder. In an interview of Victim, he stated that he said something to the effect that he wanted an attorney.

3

7. Upon this statement by Victim, JASKULA reached for and grabbed Victim by the arms and shoved him face first into a door separating the room from the cell block area. The force of JASKULA's shove was such that the door opened and Victim went through the doorway. Upon coming through the doorway, JASKULA let go or lost control of Victim and the Victim hit the floor face first and appeared to hit his face on a ledge or shelf on a desk built into the wall. Upon hitting the floor/shelf, Victim appears to become limp/unresponsive and JASKULA grabbed Victim by Victim's handcuffed arms and dragged Victim around the corner of the desk and down a hallway towards an open cell. What are believed to be drops of blood appear on the floor as Victim is being dragged by JASKULA towards the cell. As JASKULA is dragging Victim by the arms, Victim is on his side in a somewhat curled up position. During these events, Victim is not, and appears incapable of, offering any physical resistance.

8. JASKULA dragged Victim for approximately 10-15 feet and turned into an open cell. Upon turning into the cell, it appears that Victim's head hit the door frame of the cell which resulted in apparent drops of blood accumulating on the floor next to the door frame. As JASKULA is dragging the victim, the two officers and other cell block attendant follow behind. Immediately upon entering the cell, JASKULA pulled Victim up and had Victim bend over with his head wedged into the corner of the cell and facing down over a seat built into the wall of the cell. In the cell, Victim's shoes, socks and pants are removed and a different set of hand restraints are put on Victim. While Victim is in the cell, an obvious, and rather large, accumulation of blood forms on the seat and the floor of the cell.

9. Upon being removed from the cell, Victim was placed by JASKULA and the other attendant into a restraint chair which is used to restrain prisoners who are non-compliant. Victim was then wheeled into another cell in the restraint chair where he remained for approximately an hour and 45 minutes.

10. After Victim was placed into the other cell, JASKULA proceeded to the BPD lieutenants' (who supervise the lock-up) office located in the booking area of the lock-up. At that time, JASKULA informed the two lieutenants on duty, in sum and substance, that officers had brought in a prisoner who had a bloody nose, giving the lieutenants the impression that the prisoner had the bloody nose when he arrived at the lock-up. When one of the lieutenants informed JASKULA that the arresting officers would have to transport Victim to the Erie County Medical Center ("ECMC"), JASKULA told the lieutenant that Victim's nose was not bleeding anymore and that Victim was refusing medical treatment.

11. At approximately 11:30 p.m., another cell block attendant informed the lieutenant on duty that Victim was complaining of chest pain at which time the lieutenant called for an ambulance as well as directed that the two arresting officers return to the lock-up in order to accompany Victim as Victim was transported to ECMC for medical treatment. While at ECMC, Victim was diagnosed as having mildly displaced fractures of the interior nasal bones with overlying soft tissue injury. Victim also received sutures to close a laceration between his nose and right eye. Victim did not have these injuries prior to entering the cell block area.

12. Based upon the foregoing, I respectfully submit there is probable cause to believe that MATTHEW JASKULA violated Title 18, United States Code, Section 242, deprivation of rights under color of law.

WHEREFORE, I respectfully request that this Court issue a Criminal Complaint and Arrest Warrant for MATTHEW JASKULA so that he can be brought before the Court to answer for these charges.

_____
JENNIFER J. AMO
Special Agent
Federal Bureau of Investigation

Sworn to before me this 9th day of June, 2016.

_____
MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE

6